Jason M. Conder WSB # 6-3529
Assistant United States Attorney
District of Wyoming
P.O. Box 449
Lander, WY   82520
(307) 332-8195
Jason.Conder@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| **v.** | **Case No. 19-CR-36-S** |
| **JASON ALLEN LITTLE,** | |
| Defendant. | |

**GOVERNMENT'S MOTION TO VACATE SUPPRESSION HEARING CURRENTLY SET FOR APRIL 24, 2019 &
GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION TO SUPPRESS**

The United States respectfully requests the Suppression Hearing currently set for April 24, 2019, be vacated. The government concedes the limited claim asserted in the Defendant's April 15, 2019, motion to suppress.   Specifically, the United States concedes that while in custody law enforcement spoke to the Defendant without providing an advisement per *Miranda*. Therefore, the Defendant's response to law enforcement questioning during this time is inadmissible. Nonetheless, the United States has additional evidence proving the element of the Defendant's unlawful use of methamphetamine. Therefore, the government will proceed with the current charge.

Since the United States concedes the limited issue raised in the Defendant's motion, there

1

is no need to proceed with the suppression hearing at this time.   To the extent the Defendant may wish to address other suppression claims or issues, he has not yet done so.   As noted in his recent motion to continue the Defendant is reviewing discovery and may have additional issues. However, any other potentials issues have not been raised, and are not suitable for a suppression hearing at this time.

Additionally, the United States would inform the court that there are technical difficulties regarding to the relevant body camera footage in this case.   Specifically, several hours of the interaction between law enforcement and the Defendant at the hospital was captured by body camera. These recordings have been broken down into six separate recordings.   However, the audio to these recordings was lost during the original copying/transfer process and the Defendant has not been able to review the audio.   During the afternoon of April 18, 2019, the United States was able to remedy this technical glitch on two of the six recordings, and remaining four were corrected on the afternoon of April 19, 2019.   However, the Defendant has not been able to review those audio recordings, and the U.S. Attorney's Office will provide those corrected copies to the Defendant as soon as possible.

Accordingly, for these reasons and those outlined in more detail below, it would be contrary to the interest of justice and efficiency to go forward with the suppression hearing as currently scheduled. Therefore, the United States requests the suppression hearing set for April 24, 2019, be vacated.

### *Procedural Background*

On March 1, 2019, a criminal complaint was filed alleging the Defendant was an unlawful drug user in possession of firearms.   The Defendant came into federal custody on this complaint

on March 11, 2019, and had his initial appearance that same day.   On March 14, 2019, a preliminary hearing and detention hearing was held, at which time the Defendant waived his right to contest those hearings.   On March 21, 2019, the Grand Jury returned a one count indictment alleging the Defendant was an unlawful user of a controlled substance, namely methamphetamine, in possession of firearms, in violation of 18 U.S.C. § 922(g)(3) and 924(a)(2).

The Defendant made his initial appearance and arraignment on the indictment on March 29, 2019, in Casper, Wyoming.   Pursuant to 18 U.S.C. § 3161, trial must occur within seventy days of the first appearance on the indictment in the district where charges have been filed. Seventy days from that date would be June 7, 2019.

On March 29, 2019, this court issued a Discovery and Scheduling Order.   In that Order, the United States was required to provide discovery to the Defendant by April 22, 2019, and the court set trial for May 13, 2019.   On April 15, 2019, the Defendant filed a motion to suppress the statements he made to law enforcement, while at the hospital being questioned by law enforcement, regarding his use of methamphetamine.   The Defendant contends these statements were made to law enforcement in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

On April 15, 2019, this court issued an order requiring an expedited response, on or before April 22, 2019, to this motion, and further set a hearing on the Defendant's Motion for April 24, 2009, at 9:00 a.m.   Subsequently, on April 16, 2019, the Defendant filed an "ends-of-justice" motion to continue trial.

### Factual Background

If this matter were to proceed to trial or hearing, the government anticipates the following evidence would be presented:

At around 9:15 a.m. on February 24, 2019, the Defendant, who was living in a camper on his parent's property in rural Park County, Wyoming, near the town of Meeteetse, sent a text message to a Special Agent (SA) working with the Wyoming Division of Criminal Investigation (DCI).[1]   During the next few hours, through telephone calls and text messages, the Defendant informed the Special Agent that he was armed, angry, suicidal, and headed to a residence in Thermopolis, Wyoming.   Specifically, the Defendant stated that "today was the day he was going to die" and indicated, that the police had better bring something bigger than a 30-06 because, he was wearing body armor and he "was locked cocked and ready to rock" saying they "pissed off the wrong Marine today."[2]  While communicating with the Defendant, the DCI Special Agent also contacted various law enforcement agencies in Park County and Hot Springs County, Wyoming to inform them of the developing situation with the Defendant.

At approximately, 10:45 a.m., on February 24, 2019, a Deputy with the Park County Sheriff's Office, was called by his Sergeant and told to get geared up and on duty because the Defendant was making suicidal comments. Park County Deputies had learned that the Defendant left his parent's residence in a two-tone brown Ford pickup truck and was heading to Thermopolis,

---

[1] The Defendant was familiar with this DCI Special Agent because the Defendant had been providing DCI information regarding the trafficking of methamphetamine, by his associates, in Northwest Wyoming

[2] One of the Defendant's text messages stated the following:

> "Well everyone has made apparent my life is a lie.   I wish I would have arrested me I guess but I guys kept my girl out of jail while doung all this to see if I'm selling drugs.   Iam done. Ian fone.   I am ready to die and want my old life and my shitty girlfriend back before I am gone. I cant keep doing this and playing therlse games. If I thought the drug word was evil it has nothing on what u guys do to someones life." /sic/

During one of the phone conversations, the Defendant stated that he was upset because his girlfriend was not responding to him, and that DCI was using his girlfriend against him, and asked why DCI was talking to her and keeping her away from him.   The Defendant stated that stated that he wished he had just been arrested the first time he met DCI and all he wanted was his old life back.   The Defendant also stated that no one cared about him, he would be better off dead, and "today was my last day."

possibly to an address on Big Horn Street. The Defendant allegedly had had firearms in the truck, specifically AR's, a handgun and a shotgun.

On February 24, 2019, at approximately 11:26 a.m., the Thermopolis Police Department received information that the Defendant was headed into Thermopolis from Park County, driving a brown Ford truck bearing Wyoming registration 11-15528, wearing body armor, was heavily armed and possibly suicidal.   Then, just before noon, Thermopolis police saw a brown truck with a matching license plate and the driver was wearing a ballistic vest.

Thermopolis Police activated their lights and sirens, and the truck pulled over. The driver and sole occupant of the vehicle - the Defendant - got out of the truck and followed the police officers' commands.   Eventually, two officers removed the Defendant's ballistic vest and handcuffed him. One of the Thermopolis Police Officers placed the handcuffed Defendant into a patrol car and transported him to the Hot Springs County Memorial Hospital, to address whether the Defendant should be involuntary committed because of a mental illness. A Hot Springs County Sheriff's Deputy, with a body camera, followed in a separate vehicle. The Defendant was not advised of his rights per *Miranda*.[3]

Once at the hospital, the Police Officer and Sheriff's Deputy took the handcuffed Defendant into the emergency department.   However, there were no ER rooms available, so law enforcement took the Defendant to a hospital office.   The Defendant was taken to this room at

---

3 During the transport, the Defendant told the police officer that he had nothing to live for, that he was headed to a house to get his girlfriend and he would do whatever it took to get her out of there. The Defendant further stated he just wanted [the police] to shoot him and that he was prepared; his life was over and he didn't want to deal with anything anymore, he had nothing to live for.   Whether or not these statements are admissible in relation to *Miranda* is not an issue.   The Defendant has not challenged these statements, and the United States does not anticipate seeking admission of these statements.

just after 12:00 p.m., and for the most part, he remained there talking with law enforcement and various hospital personnel until approximately 3:30 p.m.. Throughout much of this time, the Defendant was handcuffed behind his back, he sat in a chair, and one or two law officers remained in the room with him.   The door to the office remained open, at times, other law enforcement officers were outside the open door in the hallway, and at times, various medical personnel entered the room to speak with and treat the Defendant.

At one point, law enforcement spoke with the Defendant about several things, including alcohol and drug use.    In response, the Defendant stated he had two beers, and ultimately admitted he used methamphetamine, and indicated he last used a week ago.[4] While in this room the Defendant signed a medical release form, and subsequently the Emergency Room doctor spoke with the Defendant. The Doctor reviewed the findings of the various medical tests, and questioned the Defendant about matters regarding a potential involuntary commitment based upon mental health issues.   In particular, while reviewing the Defendant's blood test results, the ER Doctor indicated to the Defendant that his blood work came back with alcohol and methamphetamine in his system, to which the Defendant responded that he had two beers and did methamphetamine seven to ten days ago.[5] At one point after the ER Doctor left the room, the Defendant asked law enforcement if he was going to be charged with anything.   At that time, law enforcement advised

---

[4] This is the statement the Defendant is seeking to suppress. As noted, the government concedes that the Defendant was in "custody" and his statement was made in response to law enforcement "interrogation."   Therefore, because he was not advised of his rights per *Miranda* this statement is inadmissible, and the United States will not seek its admission.

[5] The Defendant is not seeking to suppress this statement.   This admission was made in response to a statement made by medical personnel, and it was not elicited by law enforcement.   Therefore, this statement may not subject to exclusion via *Miranda*. Regardless, the Defendant has not challenged this statement.

the Defendant of his rights per *Miranda*.   The Defendant was not involuntarily committed. Law enforcement subsequently provided the Defendant with the DUI implied consent advisement, to which the Defendant consented and signed, and his blood was drawn and tested. This blood was sent to the Wyoming State Crime Lab, and the government is awaiting the test results.6

*Miranda*

The "self-incrimination clause" of the Fifth Amendment provides in pertinent part that "No person ... shall be compelled in any criminal case to be a witness against himself."   U.S. Const., Amdt. 5.   This provision is concerned only with testimonial evidence, and thus serves only to prohibit the use of *compelled* testimony by the government in its case in chief.   *See United States v. Patane*, 542 U.S. 630, 637-38, 642 (2004) **(**emphasis added).   Therefore, non-compelled, voluntary, testimonial evidence is permitted in the government's case in chief.

Recognizing that certain custodial circumstances may be coercive, the United States Supreme Court in *Miranda v. Arizona*, 384U.S. 436 (1966), established the well-known prophylactic rules--*Miranda* warnings--to insure the right against compulsory self-incrimination is upheld.   *See Oregon v. Elstad*, 470 U.S. 298, 305 (1985)*.   Miranda* requires that in order for testimonial evidence, obtained during a custodial interrogation, to be admissible in the government's case in chief a suspect must be adequately advised of their rights, and the suspect

---

6 While the Defendant was at the hospital, other police officers were securing and searching the Defendant's truck pursuant to a search warrant.   Inside the truck police found, among other things, four firearms and a host of ammunition. Additionally, during several non-custodial interviews with DCI prior to February 24, 2019, the Defendant stated that used methamphetamine in the mid to late 1990's.   He indicated that around 2000 he used methamphetamine laced with mescaline, and did not like it, so he did not use methamphetamine again until March 2018. The Defendant stated that when he started using methamphetamine again in March 2018, he would snort it or smoke it approximately every 3-4 days, and would purchase it in 1-2 gram quantities. In a February 19, 2019, interview with DCI the Defendant admitted he used methamphetamine within the past week.

must then knowingly and voluntarily waive those rights.   *Missouri v. Sibert*, 542 U.S. 600, 608-09 (2004); *United States v. Patane*, 542 U.S. 630, 638-42 (2004); *Dickerson v. United States* 530 U.S. 435 (2000).   Police officers need not administer *Miranda* warnings to everyone they question, rather, *Miranda* applies only to custodial interrogations.   Therefore, "*Miranda* rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'"   *United States v. Jones*, --- F.3d ----, 2008 WL 1812886 *3 (10th Cir. 2008).

Whether a person is in custody for *Miranda* purposes depends on the type of the encounter with police. Of the three types of police-citizen encounters-voluntary cooperation (consensual encounter), an investigatory detention (*Terry* stop), and a formal arrest- *Miranda's* custody element is generally triggered only in situations associated with formal arrests. *Id.* In other words, the safeguards prescribed by *Miranda* become applicable when a suspect's freedom of action is curtailed or deprived in any significant way, such as that associated with formal arrest. *Id.* (*citing Miranda*, at 444).   The relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *United States v. Berkemer*, 468 U.S. 420, 442 (1984). Thus, for *Miranda* purposes, a suspect may be in police "custody" before they are "arrested" in the Fourth Amendment sense. *United States v. Perdue*, 8 F.3d 1455, 1464-66 (10th Cir. 1993). *Miranda* further provides that term "interrogation" refers not only to express questioning, but to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect.   *Rhode Island v. Innis*, 446 U.S. 291, 301(1980).

Here, the facts and circumstances show the Defendant was in custody at the hospital. The Defendant was handcuffed, placed in a police car, and then taken to the hospital. Once at the

hospital the handcuffed Defendant was escorted inside, where he sat in an office for several hours with law enforcement remaining in the room.   Accordingly, his freedom of action was curtailed and deprived in a significant way. Even if the law enforcement did not believe the Defendant was "arrested" at that time, a reasonable person would have believed they were in custody, as his freedom of action was significantly restricted.

Furthermore, the communication between law enforcement and the Defendant appears to be the type of words or actions reasonably likely to elicit an incriminating response from the Defendant.   Thus, it qualifies as "interrogation."

When law enforcement asked the handcuffed Defendant, at the hospital, about his alcohol and drug use that constituted a custodial interrogation.   Because the Defendant was not advised of his rights per *Miranda*, his ultimate response - that he had two beers, and used methamphetamine a week ago, is inadmissible pursuant to *Miranda*.   Therefore, the United States concedes this issue.

### *Motion to Continue/Reset*

Since the United States concedes the sole issue raised in the Defendant's April 15, 2019, motion to suppress, and the Defendant has raised no other suppression issues at this time, there is no need to go forward with the currently scheduled suppression hearing.   However, as noted in the Defendant's motion to continue trial he is still reviewing the discovery provided prior to the court's April 22, 2019, discovery deadline, and he will also be reviewing the body camera recordings with both audio and video when received.   Therefore, if necessary, the Defendant should be allowed to file an additional motion to suppress. Nonetheless, the currently scheduled suppression hearing is unnecessary.

The United States has contacted counsel for the Defendant, and counsel has no objection to the government's request to vacate the April 24, 2019, Suppression Hearing.

In light of the government's concession to the issue raised in the Defendant's motion to suppress, as well as the other facts and circumstances as outlined above, the United States requests the Suppression Hearing currently set for April 24, 2019, be vacated.

Respectfully submitted this 22nd day of April 2019.

MARK A. KLAASSEN
United States Attorney

By:     /s/ Jason M. Conder
JASON M. CONDER
Assistant United States Attorney

10

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 22nd day of April 2019, I served a true and correct copy of

the foregoing GOVERNMENT'S MOTION TO VACATE THE SUPPRESSION HEARING

CURRENTLY SET FOR APRIL 24, 2019 & GOVERNMENT'S RESPONSE TO

DEFENDANT'S FIRST MOTION TO SUPPRESS upon counsel of record by electronic filing.

*/s/ Kate F. Mumford*
For the United States Attorney's Office